IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| RICHARD PFEFFER, | ) | CV. NO. 07-00492  DAE-BAK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HILTON GRAND VACATIONS | ) | |
| COMPANY, LLC et al., | ) | |
| | ) | |
| Defendants. | ) | |

_____

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On January 5, 2009, the Court heard Defendant Hilton Grand

Vacation Company, LLC's ("Defendant") Motion.  Charles H. Brower, Esq.,

appeared at the hearing on behalf of Plaintiff; Steven M. Nakashima, Esq., and Jan

Boivin, Esq., appeared at the hearing on behalf of Defendant.  After reviewing the

motion and the supporting and opposing memoranda, the Court GRANTS IN

PART AND DENIES IN PART Defendant's Motion.  Defendant's motion is

granted with respect to Plaintiff's negligent infliction of emotional distress claim,

intentional infliction of emotional distress claim, hostile work environment claim,

and Plaintiff's request for punitive damages.  Defendant's motion is denied with

respect to Plaintiff's age discrimination claim, disability discrimination and

retaliation claims, and Defendant's request for application of the after-acquired evidence doctrine.

## BACKGROUND

Plaintiff was 56 years old at the time he applied for a position with Defendant in November 2002.  Plaintiff was employed as a timeshare salesman and he worked at the sales office, which is located on the Hilton Waikoloa Hotel ("Waikoloa") property, an entity separate from Defendant.

In 2003, Plaintiff received a Team Member Handbook, which provided that discrimination on the basis of age or disability is prohibited, and that retaliation is prohibited.  The Team Member Handbook also provided as follows:  "Violation of any of the following rules may be cause for immediate termination: a) Theft, attempted theft . . .  f) Willful falsification of Company records . . . j) Gross misconduct  or behaviors serious enough to negatively affect the overall reputation of the Company."  (Def. Ex. G.)

In 2004, Plaintiff received handicapped parking status because of a note from his physician stating that he had severe nerve damage and could not walk long distances without incurring pain.  Because there were no handicapped parking stalls, Defendant arranged for Plaintiff to have access to free valet parking.  Before September 2005, Plaintiff often parked his own car in the valet lot if the valet

drivers were busy and waived him into the lot.  The management team allegedly

changed in August or September 2005, and Plaintiff was told he was not supposed

to park his own car, but instead was to park at the curb on the right side of the circle

in the front of the Waikoloa and the valet drivers would pick up the cars later and

drive them into the lot.

The August 2005 management team change brought in Plaintiff's new

supervisor, Marcus Lauren ("Lauren").  The new management team required the

sales agents to stay at work until 4:30 p.m.  Plaintiff used to leave work around 2:00

p.m.  The added time of sitting in the sales office increased Plaintiff's back pain.  In

mid-September 2005, Plaintiff asked to leave work early because of severe back

pain.  Lauren allegedly told Plaintiff he could leave early that day but that he should

obtain a doctor's note if he needed to leave early again.

On September 30, 2005, Plaintiff obtained a note from his physician

stating that due to constant back pain, Plaintiff may need to leave work after

approximately five hours on some days throughout the week.  Plaintiff met with

Lauren on October 2, 2005, to give him this doctor's note.  However, Lauren

allegedly told Plaintiff that if he turned the note in Lauren would have to terminate

his employment because Lauren did not want to give him the accommodation.

Plaintiff allegedly stated that he felt it was discriminatory and he may have to apply for Temporary Disability Insurance.  Plaintiff did not give Lauren the doctor's note.

Plaintiff contacted Human Resources Director for Defendant Gary Sirman ("Sirman") by phone on October 3, 2005, to tell him that Lauren threatened to fire him if he submitted the doctor's note requesting an additional accommodation.  Plaintiff sent Sirman an email on October 5, 2005, stating that Lauren had requested a doctor's note due to Plaintiff's request to leave early and that when Plaintiff gave it to him, Lauren stated that if he made this a part of his file, he would have to terminate his employment.  Defendant denies receiving this October 5, 2005 email to Sirman.  Defendant searched it records in 2007 for a copy of the email, but was unable to locate it because it purged its records in 2005. Plaintiff did not provide a copy of the doctor's note to Sirman.

On October 7, 2005, Plaintiff's car detailer informed him of a ding on the front left fender of his Jaguar.  Plaintiff called former Assistant Manger of the Waikoloa, Phil Murray, and told him of the damage he discovered.  Murray advised that he file a report with the Waikoloa on October 9, 2005, which was the next time that Plaintiff was scheduled to work.  Plaintiff returned to work on October 9, 2005, and reported the damage to his car.  In the written report, Plaintiff stated that he had used the valet on October 6, 2005, his auto detailer noticed the damage the next

4

morning, and he was advised to make a report.  (Def. Ex. L.)  Plaintiff alleges that the security department officer of the Waikoloa told him to put a date of damage on the report or the report could not be made.  Plaintiff allegedly told the security officer that he was unsure of the exact date the damage occurred, but chose October 6, 2005, as that was the day before the damage was discovered.

Director of Claims for Waikoloa, Sandra Oyama-Yuen, interpreted Plaintiff's report as making a claim that the valet damaged his car on October 6, and Plaintiff allegedly told Oyama-Yuen that October 6th was the operative date. Plaintiff asserts that he merely reported that he used the valet service to park his car and then discovered damage the next day.  Plaintiff states that he wanted to make the report so he could give it to his insurance company because he had comprehensive insurance coverage and they would fix his car.  Murray had already explained to Plaintiff that the Waikoloa would not pay for the damage and Plaintiff was not expecting the Waikoloa to pay his $250 deductible.  Plaintiff states that he merely wanted to file a report of what he thought happened because his insurance company required a report.  Plaintiff states he was earning approximately $344,000 per year and was not concerned about having the Waikoloa pay for anything. Plaintiff was one of the most successful sales people on staff.  Defendant argues that Plaintiff was knowingly making a false report of damage caused by the valets.

Oyama-Yuen conducted an investigation on the Waikoloa's behalf. She reviewed security surveillance footage for October 5 and 6, the valet parking log sheets, and she interviewed valet drivers working that day. Oyama-Yuen states that the surveillance footage shows that Plaintiff bypassed the valet area and self-parked his Jaguar in the valet lot on both October 5 and 6, 2005. This Court reviewed the surveillance footage and it shows only one instance of a black car being driven toward the valet lot. There is no person in view on the footage, and there is no way to tell who is driving the car. Oyama-Yuen does not state why she believes this footage indicates that Plaintiff self-parked his car. For example, there is no evidence in the record as to whether the camera angle would have captured Plaintiff exiting his car and turning it over to the valet before the car comes into view in the frame.

The valet parking log sheet did not contain Plaintiff's name. Plaintiff states that the people with handicapped status were not given valet receipts and were not listed on the valet log sheets because the valet drivers knew them and their cars.

Oyama-Yuen claims that the valet drivers she interviewed explained to her that Plaintiff had for the past several months complained about where the valet drivers chose to park his car, and other things such as the selection of a different

6

radio station when he returned to his vehicle.  Oyama-Yuen states that three valet

drivers submitted written statements that Plaintiff had been self-parking his car in

the valet area.  This Court has reviewed those three statements.  Two of the

statements support the claim that Plaintiff had been self-parking his car in the valet

area.  However, the statement by Craig Lambert states that "most every morning"

Plaintiff will park his own car, but that "occasionally valet will take his car from the

side of the drive and park it."  (Def. Ex. P.)

Based on all of this evidence, Oyama-Yuen concluded that Plaintiff

had self-parked his car on October 6th and was lying when he claimed that a valet

driver had caused damage to the car.  Oyama-Yuen explained her findings to

Plaintiff and Gary Sirman.

Plaintiff states that on October 10, 2005, he saw Sirman and reminded

him about the telephone call and e-mail regarding Lauren's comments about

Plaintiff providing a doctor's note, and also mentioned that he had filed a damage

report.  On or about October 12, 2005, Plaintiff spoke with Oyama-Yuen and told

her that he was not certain of the date of the damage to his car.  She told him the

Waikoloa would not pay for his damage, and he stated that was fine because his

insurance company would take care of it.  Plaintiff later received a letter from

Oyama-Yuen stating that the Waikoloa would not take responsibility for the

damage to the car.   Plaintiff told Oyama-Yuen again that he was not expecting Waikoloa to pay for the damage as he was uncertain of the exact date and would ask his insurance company to handle the damage without involving the hotel. Plaintiff contacted his insurance company and made such a request.  On October 16, 2005, Plaintiff sent Sirman an email confirming that he was not expecting the Waikoloa to pay for the damage and would have his insurance company handle it.  Plaintiff also states that he called Sirman to request a meeting regarding his physician's request for accommodation for his back pain.

Plaintiff met with Sirman and Lauren on October 18, 2005.  Plaintiff allegedly stated that the only way his car could have been damaged was while it was in the valet lot because the valet drivers back the vehicles in, leaving the front open to possible damage, whereas when Plaintiff parks his own car, he parks it nose first.  Plaintiff was allegedly asked why he had previously stated to Oyama-Yuen and Sirman that a valet driver had parked his car on October 6th when Sirman and Lauren know that the valet drivers did not park his car that day.  Sirman thought Plaintiff's response was evasive because he allegedly stated only that he must have been mistaken about the day as the valets parked his car on most days.  Plaintiff, however, could not recall the last time that valets parked his car, other than the day of the meeting, and valets had already verified that most days Plaintiff parks his

8

own car.  Plaintiff states that he assumed that the damage happened in the valet lot a short time before October 7, 2005.

After the meeting, Plaintiff sent Sirman an email, stating that he dropped all issues with regard to the car damage because he did not know the exact date, and that it was never his intention to cause a problem for Defendant.  Plaintiff also stated that at the meeting he informed Sirman that he had asked Lauren for a temporary accommodation based upon his back pain while he tried out different medication and that Lauren informed him that he could lose his sales position by submitting the doctor's note.

Plaintiff sent another email on October 19, 2005, stating that he did not know the exact date of damage to his car, but he knew that the car was damaged sometime between September 30 and October 7, 2005, that he dropped the issue, and was sorry for any problems caused by not knowing the date.

Lauren and Sirman concluded that Plaintiff had made a false claim of damage to his car and that he should be terminated for violating Defendant's standards of conduct for falsifying a record, gross misconduct that could negatively affect Defendant's reputation, and for engaging in attempted theft by trying to get paid on a false claim.  Sirman and Lauren believed that Plaintiff's actions

jeopardized Defendant's relationship with Waikoloa because his actions could have resulted negatively for the valet drivers.

Lauren and Sirman met with Plaintiff on October 20, 2005, and he was given a memorandum setting forth the reasons for his termination.  In the termination memo it states that Plaintiff had been very upset about his car and stated that his insurance company would probably sue the Waikoloa for damages if they had to fix it.  Lauren was 44 years old at the time of the decision, Sirman was 55 years old, and Plaintiff was 59 years old.

Plaintiff filed his second amended complaint on November 26, 2008, alleging violations of Hawaii Revised Statute section 378-2 based upon age, disability, and retaliation for requesting a reasonable accommodation and objecting to discrimination based upon disability (Count I); Intentional Infliction of Emotional Distress ("IIED"); Negligent Infliction of Emotional Distress ("NIED") (Count II); a common law claim of hostile work environment (Count III); and requested punitive damages.

Defendant filed the instant motion for summary judgment on November 21, 2008.  (Doc. # 45.)  Plaintiff filed his opposition on December 18, 2008, and Defendant filed a reply on December 24, 2008.

STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corrections, 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial -- usually, but not always, the defendant -- has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

11

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings.  Porter, 419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."). "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence and

12

inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id.  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

DISCUSSION

Defendant seeks summary judgment on Plaintiff's age discrimination, disability and retaliation claims, Plaintiff's NIED and IIED claim, hostile work environment claim, and punitive damages.  In addition, Defendant requests that this Court impose the after-acquired evidence doctrine to cut off Plaintiff's damages, and requests that this Court disregard many exhibits submitted by Plaintiff.

I.    Plaintiff's Evidence

In its reply brief Defendant asks that this Court disregard most of Plaintiff's exhibits for various reasons.  Defendant requests that this Court ignore Plaintiff's exhibits 5, 7, 11-13, 17-18, and 21 because they were not referred to in Plaintiff's memorandum in opposition and it is not this Court's job to sift through the evidence.

13

These exhibits may not have been referred to by number in the memorandum in opposition, however, Exhibits 5, 7, 11, and 17 were referred to by number in Plaintiff's concise statement of facts.  In addition, these exhibits were referred to in substance in the memorandum and each exhibit was specifically cited by number in Plaintiff's declaration.  Thus, although the memorandum may have been lacking by failing to specifically identify by number each exhibit, it was not so deficient that this Court was unable to locate and understand Plaintiff's arguments and support therefore.

Defendant contends that this Court should disregard Exhibits 10-13, 15, 17, and 19 because they have  not been properly authenticated.

Rule 901(a) of the Federal Rules of Evidence provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  Testimony by a witness with knowledge that a matter is what its claimed to be meets the requirements of the evidentiary rule.  Fed. R. Evid. 901(b)(1).  Rule 56(e) of the Federal Rules of Civil Procedure provides that "affidavits shall be made on personal knowledge . . . and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  LR 7.6 provides that "[a]ffidavits and declarations shall conform to the requirement

14

of Fed. R. Civ. P. 56(e) . . . [and] [a]ffidavits and declarations not in compliance with the rule may be disregarded by the court."  Unauthenticated documents cannot be considered in a motion for summary judgment.  Orr v. Bank of Am., NT & SA, 285 F.3d 764, 773 (9th Cir. 2002).

This Court agrees that Exhibits 11 and 12 are not properly authenticated.  However, that can easily be remedied through declarations by the person who made the original statement in Exhibit 11 and the person who took the photo in Exhibit 12.  Indeed, courts prefer to allow parties to remedy evidentiary deficiencies when doing so does not severely prejudice the other party.  See Barefield v. Bd. of Trs. of Cal. State Univ. Bakersfield, 500 F. Supp. 2d 1244, 1257 (E.D. Cal. 2007).  Therefore, as it appears that Exhibits 11 and 12 can easily be authenticated and the exhibits do not provide anything new that Defendant was not previously aware of, this Court provides Plaintiff with an opportunity to file an errata to his concise statement of facts with a declaration from a person with personal knowledge authenticating Exhibits 11 and 12 so that the record in this case may be complete.  Exhibit 13 is a declaration made by Bob Ninneman based upon his own personal knowledge and thus, it has been properly authenticated.

Defendant asserts that Exhibits 10, 15, 17, and 19, which are various emails, have not been properly authenticated as required by Hawaii Rule of

Evidence 901(b)(1).  This Court assumes Defendant meant to cite Federal Rule of

Evidence 901(b)(1).  As each of the exhibits are purported emails sent by Plaintiff,

they can be properly authenticated with additional information in a revised

declaration by Plaintiff.

Defendant argues that Exhibits 11 and 13 should be disregarded as

purely hearsay.  Exhibit 11 is a statement by the man who detailed Plaintiff's car

and found the damage.  This Court finds that Exhibit 11 could be proffered not for

the truth of the matter asserted therein, but for the effect upon the listener, which

was Plaintiff.  As such, it is not hearsay.  Exhibit 13 is a statement by Bob

Ninneman, a bartender at the Waikoloa who purportedly witnessed the security

guard tell Plaintiff to put a date of damage on the damage report despite Plaintiff

telling him that Plaintiff was not sure of the date his car was damaged.  This Exhibit

is being offered for the truth of the matter asserted therein and does not fall within a

hearsay exception.  Accordingly, this Court will not consider Exhibit 13.

Defendant contends that Exhibit 10 should be ignored because Plaintiff

has not complied with the original writing rule set forth in H.R.E. 1002 and 1003.

This Court assumes Defendant meant to cite the Federal Rules of Evidence.

Defendant claims that Exhibit 10's authenticity is questionable because Defendant

has no record that this email existed and the internal markings are suspicious.

16

Defendant's first argument that it does not have a copy of the email does not make Exhibit 10 suspicious because Defendant's employee testified that she did not search for a copy of that email until 2007, two years after it was purportedly sent, and that she was unable to locate the email because Defendant purged its electronic records in 2005.  Accordingly, the fact that Defendant could not locate a copy of the email in its records does not prove that the email was never sent.

Defendant's argument that Exhibit 10 is suspicious because it was not submitted by Plaintiff to the Hawaii Civil Rights Commission ("HCRC") until his request for reconsideration and that Plaintiff did not give Defendant a copy at that time are unpersuasive because Plaintiff did not have a duty to turn the email over to Defendant at the time he provided documents to the HCRC and there is no evidence that Plaintiff knew that Defendant did not have its own copy of the email.

Defendant's remaining argument regarding the difference between the header and subject line of the email may be something that can be legitimately explained by Plaintiff if he had an opportunity to respond to this attack.  In any event, the difference in notations in the email is not sufficient to make the email so inherently untrustworthy that it should be disregarded.  For these reasons, this Court

will consider Exhibit 10, assuming Plaintiff will provide a more detailed declaration authenticating Exhibit 10.

II.   Count I

    A.   Age Discrimination Claim

        Defendant argues that Plaintiff cannot meet his prima facie burden of his state law discrimination claim brought pursuant to Hawaii Revised Statute section 378-2 because he was not satisfactorily performing his job, and he was not replaced with a substantially younger employee.  In addition, Defendant asserts that no inference of discrimination could be found because Plaintiff was in a protected class at the time he was hired, and the decision-makers were in the same protected class.

        In order to establish a disparate treatment claim, the plaintiff must produce evidence that gives rise to an inference of unlawful discrimination, either through direct evidence of discriminatory intent or through the burden shifting framework set forth in McDonnell Douglas Corp. v. Green.  See Shoppe v. Gucci Am., Inc., 14 P.3d 1049, 1058-59 (Haw. 2000); Vasquez v. County of Los Angeles, 349 F.3d 634, 640 (9th Cir. 2003); Diaz v. Eagle Produce Ltd. P'ship, 521 F.3d 1201, 1207 (9th Cir. 2008).  Direct evidence is "evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption."  Godwin v.

<u>Hunt Wesson, Inc.</u>, 150 F.3d 1217, 1221 (9th Cir. 1998) (internal quotation marks omitted) (alteration in original).  In the context of an ADEA claim, direct evidence "is defined as evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the fact finder to infer that that attitude was more likely than not a motivating factor in the employer's decision."  <u>Enlow v. Salem-Keizer Yellow Cab Co., Inc.</u>, 389 F.3d 802, 812 (9th Cir. 2004) (citation, internal quotation marks, and ellipses omitted).  "When a plaintiff has established a prima facie inference of disparate treatment through direct or circumstantial evidence, he will necessarily have raised a genuine issue of material fact with respect to the legitimacy or bona fides of the employer's articulated reason for its employment decision[.]"  <u>Id.</u> (citation and brackets omitted).

Defendant argues that Plaintiff has not raised through admissible evidence any statements that could be deemed direct evidence of age discrimination.  Specifically, in a footnote in the motion, Defendant states that at most plaintiff testified that Lauren stated "you are still around" or "you are still in the business?," which Plaintiff interpreted as meaning that he should be retired or in an old-folks home.  Defendant asserts that these are stray remarks insufficient to constitute direct evidence of discrimination.

19

"Comments suggesting that the employer may have considered impermissible factors are clearly relevant to a disparate treatment claim.  On the other hand, 'stray' remarks are insufficient to establish discrimination."  Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1438 (9th Cir. 1990) (citations omitted).  In Merrick, the Ninth Circuit held that a comment by the decision-maker that he chose a certain employee because he was a bright young man was insufficient to raise a triable issue of fact of whether the decision-maker refused to promote the plaintiff based upon the plaintiff's age because it was merely a stray remark that did not show that the decision not to promote was based on age.  Id. at 14378-39.

This Court agrees with Defendant that if this were the only statement allegedly made by Lauren, this one isolated, somewhat vague statement is insufficient to create a genuine issue of fact of an inference of age discrimination. See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1284 (9th Cir. 2000) ("the use of the word promotable does not give rise to suspicions of age discrimination" for the failure to promote the plaintiff); see also Nesbit v. Pepsico, Inc., 994 F.2d 703, 705 (9th Cir. 1993) (use of the phrase  we "don't necessarily like grey hair" does create an inference of discriminatory motive); Nidds v. Schindler Elevator Corp., 113 F.3d 912, 918-19 (9th Cir. 1997) (employer's use of the phrase "old timers" did not support inference of discriminatory motive); Rose v. Wells Fargo & Co., 902 F.2d

20

1417, 1420-21 (9th Cir. 1990) (use of the phrase "old-boy network" did not support

inference of discriminatory motive); EEOC v. Ins. Co. of N. Am., 49 F.3d 1418,

1421 (9th Cir. 1995) (holding that rejecting employee because he was

"overqualified" did not support inference of discriminatory motive).

      In his opposition, Plaintiff states that in addition to the statement made

above, he heard three different people from the new management team, including

his supervisor Lauren, make age-related comments, such as "you are older than the

rock foundation near my home," "you must have sold the first timeshare week ever

in Hawaii," "maybe one day the sales offices will provide handicapped sales tables

for you old guys," and that Lauren in particular stated "dinosaurs are extinct, but

you are still alive."

      In its reply brief, Defendant asserts that these newly alleged statements

should be disregarded because Plaintiff never previously articulated these

statements during the investigation by the HCRC or in his deposition.  Defendant

contends that Plaintiff has failed to administratively exhaust this allegation as he did

not list these incidents in his HCRC charge and they are not like or reasonably

related to the incidents alleged.

      For this Court to have subject matter jurisdiction over an employment

discrimination claim brought under Hawaii Revised Statute Chapter 378, the

21

plaintiff must have first exhausted his administrative remedies by timely filing a

charge with the HCRC and obtaining a right-to-sue letter.  See Haw. Rev. Stat. §

368-12; Linville v. State of Hawaii, 874 F. Supp. 1095, 1104 (D. Haw. 1994).  "The

administrative charge requirement serves the important purposes of giving the

charged party notice of the claim and narrowing the issues for prompt adjudication

and decision," and affords "the agency an opportunity to investigate the charge."

Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002) (quoting

B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1099 (9th Cir. 2002)) (quotation

marks omitted); Vasquez v. County of Los Angeles, 349 F.3d 634, 644 (9th Cir.

2003).

"The jurisdictional scope of the plaintiff's court action depends on the

scope of the EEOC charge and investigation."  Leong v. Potter, 347 F.3d 1117,

1122 (9th Cir. 2003) (citing EEOC v. Farmer Bros. Co., 31 F.3d 891, 899 (9th Cir.

1994) and Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir. 1990)).  Generally, the

claims raised in district court must have previously been presented to the HCRC.

Id. (citing Albano v. Schering-Plough Corp., 912 F.2d 384, 385 (9th Cir. 1990)).

The court must, however, also consider claims that were not asserted in the charge,

but are asserted for the first time in the lawsuit, if those claims fell within the scope

of the agency's actual investigation, or are "like or reasonably related to" the

allegations made before the agency, such that they would have been included within the scope of an investigation.  Id. (citing Sosa, 920 F.2d at 1456); Freeman, 291 F.3d at 636.

A plaintiff's claims are considered "reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case." Freeman, 291 F.3d at 636 (citing B.K.B., 276 F.2d at 1100). Factors warranting consideration to determine whether the exhaustion requirement has been satisfied include:  "the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named within the charge, and any locations at which discrimination is alleged to have occurred." Id. "The crucial element of a charge of discrimination is the factual statement contained therein." Id.

Here, Plaintiff alleged age discrimination in his amended HCRC charge.  He stated only that if not for his age, he would not have been terminated and that he was replaced by a younger employee.  Plaintiff did not list any specific age related comments allegedly made by his supervisor or others.  However, the HCRC charge is merely a brief statement of the claims and Plaintiff is not obligated to list every statement upon which his claims are based.  The statements alleged above are clearly related to the age discrimination claim that Plaintiff brought and

23

exhausted.  Certainly, comments about age made by the decision-maker within a few months of termination are like and reasonably related to a claim of age discrimination for the termination.  That Plaintiff may be embellishing his age discrimination claim by adding these comments at such a late stage in the litigation process, goes to Plaintiff's credibility, something which this Court will not consider at the summary judgment stage.  These allegations are not so fanciful and unrelated that this Court is at liberty to ignore them all together.  Therefore, this Court will consider all statements that Plaintiff alleges were made.

As acknowledged by Defendant's counsel at the hearing, if this Court considered these statements, it would create a factual issue sufficient for the age discrimination claim to survive summary judgment.  Indeed, although Plaintiff has not provided a date that the statements by Lauren were allegedly made, Lauren became Plaintiff's supervisor less than three months before Plaintiff was terminated.  This proximity in time, in addition to the fact that these statements were allegedly made by the decision-maker, supports a finding that there is a

genuine issue of material fact of an inference of discrimination based upon age.[1]

For these reasons, Plaintiff's age discrimination claim survives summary judgment.

B.     Disability Discrimination Claim

Defendant asserts that Plaintiff's disability discrimination claim must be dismissed because it is based only upon Plaintiff's self-serving allegation of his subjective belief as to the reason for termination.  Defendant also asserts that Plaintiff cannot establish a prima facie case because he cannot prove that he could perform the essential functions of his position or that he suffered an adverse employment action because of his disability.  Finally, Defendant argues that it had a legitimate reason for termination and Plaintiff cannot prove pretext.

In order to establish a prima facie case of disability discrimination, the Plaintiff must show that "(1) he or she is an individual with a 'disability' within the meaning of the statute; (2) he or she is otherwise qualified to perform the essential duties of his or her job with or without reasonable accommodation; and (3) he or she suffered an adverse employment decision because of his or her disability."

---

[1] Defendant's arguments about the ages of the decision-maker Lauren and Human Resources Director Sirman are not persuasive as a matter of law because Lauren, although over 40 years old, is 15 years younger than Plaintiff, and Sirman, who was closer in age to Plaintiff than Lauren, was not the decision-maker.  In addition, the fact that Plaintiff was 56 years old at the time he was hired is not persuasive as a matter of law because Lauren was not the person who hired Plaintiff.

French v. Haw. Pizza Hut, Inc., 99 P.3d 1046, 1051 (Haw. 2004) (adopting the analysis for establishing a prima facie case of disability discrimination under HRS § 378-2 that was established in Sutton v. United Air Lines, Inc., 527 U.S. 471, 119 (1999)).

> If the plaintiff meets the prima facie burden,
>
> the burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory, reason for the challenged action.  If the employer does so, the plaintiff must show that the articulated reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

Chuang v. Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115, 1123-24 (9th Cir. 2000) (internal quotation marks and citation omitted).  With respect to proving pretext, "[a]s a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment."  Id. at 1124.  "[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  Aragon v. Republic Silver State Disposal Inc., 292 F.3d 654, 659 (9th Cir. 2002).

Here, Plaintiff has produced enough evidence to create a genuine issue of fact regarding his disability discrimination claim. Specifically, it is assumed at this stage that Plaintiff is disabled. It is undisputed at this stage that Plaintiff was a successful timeshare salesman. Although Defendant argued that Plaintiff was not performing the essential functions of his position, this argument is based upon the reason for termination, which was the making of an allegedly false report of damage to his car caused by the valets. There was no evidence that Plaintiff was not otherwise adequately performing his duties. Accordingly, in all other respects, Plaintiff was performing the essential functions of his position.

Plaintiff presented evidence that Lauren, his direct supervisor and decision-maker with respect to the termination, was aware of Plaintiff's back pain and that Plaintiff planned to obtain a doctor's note to be excused from work early on some days. Defendant denies receiving a doctor's note regarding such alleged accommodation and denies receiving emails Plaintiff allegedly sent, however, Defendant has not denied at this point that Plaintiff and Lauren met, and that Lauren was aware of a request to leave early based upon back pain, and that Plaintiff informed Sirman of such request. Moreover, although Defendant granted Plaintiff an accommodation with respect to use of the valet, that accommodation was apparently made by Plaintiff's previous supervisor, not by Lauren, and Plaintiff's

27

termination was close in time, approximately three weeks, to his request for an accommodation for back pain.

Defendant also asserts that Plaintiff cannot prove pretext because at most, Plaintiff disagrees with the results of Defendant's investigation of the alleged false report of car damage.  This Court disagrees and finds that taking the evidence in the light most favorable to Plaintiff, there is a genuine issue of fact regarding Plaintiff's prima facie case and pretext.  For example, Plaintiff has stated that he was always up front that he was unsure about the date of the damage to his car.  In addition, Plaintiff stated that he only made a report for his insurance purposes and that he did not want to cause trouble with Waikoloa or Defendant.  Moreover, Defendant's investigation had some holes because Defendant reviewed only two days of footage, not the entire week that Plaintiff stated his car was damaged, and one of the valet's interviewed by Defendant indicated that the valet's park Plaintiff's car on occasion.  As Plaintiff was admittedly a highly successful timeshare salesman, had indicated that he was unsure of the exact date of damage to his car, had indicated that he would let his insurance company take care of the damage without involving Defendant or the Waikoloa, and had allegedly recently made a request for an additional accommodation to his new direct supervisor Lauren, there is a question of fact of whether Defendant terminated him because of

28

his most recent request for accommodation, rather than for his alleged false report. Defendant's arguments that Plaintiff has manipulated evidence and changed his story go to Plaintiff's credibility.  For these reasons, Defendant's motion regarding this claim is DENIED.

C.    <u>Disability Retaliation Claim</u>

Defendant avers that Plaintiff's retaliation claim should be dismissed because Plaintiff's allegation that Lauren stated that if he made the doctor's note regarding the back pain a part of Plaintiff's file, he would have to terminate Plaintiff's employment, is so incredible that it should not be considered.  Defendant argues that because Plaintiff never in fact submitted the doctor's note, he cannot prove a causal connection between his request for accommodation and his termination.  This Court disagrees.

Hawaii Revised Statute section 378-2 contains a retaliation provision, which like the American with Disabilities Act, provides that it is unlawful "[f]or any employer . . . to discharge, expel, or otherwise discriminate against any individual because the individual has opposed any practice forbidden by this part or has filed a complaint, testified, or assisted in any proceeding respecting the discriminatory practices prohibited under this part[.]"  Haw. Rev. Stat. § 378-2(2).

To prove a retaliation claim under HRS § 378-2(2), the plaintiff must first establish a prima facie case "by  demonstrating that (a) the plaintiff . . . has opposed any practice forbidden by HRS chapter 378 . . . (b) his or her employer . . . has discharged, expelled, or otherwise discriminated against the plaintiff, and (c) a causal link has existed between the protected activity and the adverse action[.]" Schefke v. Reliable Collection Agency, Ltd., 32 P.3d 52, 70 (Haw. 2001) (citation, brackets and ellipses omitted).  "[I]f the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action, and . . . if the defendant articulates such a reason, the burden shifts back to the plaintiff to show evidence demonstrating that the reason given by the defendant is pretextual." Id. (citations omitted).[2]

The law is clear that a request for a reasonable accommodation is protected activity.  Pardi v. Kaiser Foundation Hosps., 389 F.3d 840, 850 (9th Cir. 2004) ("Pursuing one's rights under the ADA constitutes a protected activity."); McAlindin v. County of San Diego  192 F.3d 1226, 1238 (9th Cir. 1999) ("by

_____

[2] In general, the Hawaii courts have followed federal law in discrimination cases. See French v. Hawaii Pizza Hut, Inc., 99 P.3d 1046, 1051 (Haw. 2004) (noting that "The Hawai'i statutes and HAR prohibiting discrimination based on disability are textually similar to the Americans With Disabilities Act of 1990(ADA), 42 U.S.C. § 12101.").

vigorously asserting his rights under the ADA, as well as other state and federal discrimination laws, McAlindin engaged in protected activity and established the first element of a prima facie case.").

"Causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." Yartzoff v. Thomas 809 F.2d 1371, 1376 (9th Cir. 1987). Temporal proximity may by itself constitute circumstantial evidence of retaliation. Bell v. Clackamas County, 341 F.3d 858, 865-66 (9th Cir. 2003); see Pardi, 389 F.3d at 850 ("When adverse employment decisions closely follow complaints of discrimination, retaliatory intent may be inferred."); See Thomas v. City of Beaverton, 379 F.3d 802, 812 (9th Cir. 2004) (for a retaliation claim, a plaintiff can establish a causal link "from timing alone when there is a close proximity between the two") (internal citations omitted).

Here, Defendant does not contest at this stage that Plaintiff engaged in protected activity by first making a request to Lauren and attempting to provide a doctor's note. Nor does Defendant contest that Plaintiff suffered an adverse employment action. Plaintiff has presented enough evidence, even without

considering the alleged statement by Lauren threatening termination, to create a genuine issue of fact of whether Plaintiff engaged in protected activity.  Plaintiff was terminated only three weeks after allegedly making his request for an accommodation to Lauren on October 2, 2005.

Although Defendant terminated Plaintiff for making what it thought was a false claim, Plaintiff has presented enough evidence to create a question as to whether that reason was pretext as Plaintiff stated more than once that he was not certain of the date he used the valet and he was not seeking compensation but had filed the damage report for insurance purposes.  This is sufficient to create an issue of whether Plaintiff was discharged because of his request for accommodation. Many of the issues raised by Defendant boil down to Plaintiff's credibility.  As this Court must construe the facts in the light most favorable to Plaintiff, it cannot enter summary judgment in favor of Defendant on this claim.

III.   NIED Claim

Defendant argues that this claim barred by the workers' compensation scheme.  Plaintiff did not address this claim in his opposition.

Hawaii's workers' compensation law provides the exclusive remedy for an employee's claims of negligent infliction of emotional distress.  Hawaii Revised Statute Section 386-5 states in part:

> The right and remedies herein granted to an employee . . .
> on account of a work injury suffered by the employee
> shall exclude all other liability of the employer to the
> employee . . . to recover damages from the employer, at
> common law or otherwise, on account of injury, except
> for sexual harassment or sexual assault and infliction of
> emotional distress or invasion of privacy related thereto[.]

This bar clearly pertains to claims for negligent infliction of emotional distress that are not related to sexual harassment or assault. Luzon v. Atlas Ins. Agency, Inc., 284 F. Supp. 2d 1261, 1263-64 (D. Haw. 2003) (citing Beaulieu v. Northrop Grumman Corp., 161 F. Supp. 2d 1135, 1137 (D. Haw. 2000) and Courtney v. Canyon Television & Appliance Rental, Inc., 899 F.2d 845 (9th Cir. 1990)).

Accordingly, Plaintiff's NIED claim is barred and summary judgment is GRANTED in favor of Defendant on this claim.

IV.    IIED

Defendant seeks summary judgment on Plaintiff's IIED claim because it is derivative of his discrimination claims, which all should be dismissed. However, this Court had not dismissed Plaintiff's age and disability discrimination and retaliation claim and therefore, this argument fails.

Defendant also states that this claim should be dismissed because Plaintiff cannot establish outrageous conduct or that he suffered severe emotional distress. This Court agrees.

33

In order to establish an IIED claim, a plaintiff must show "'(1) that the act allegedly causing the harm was intentional or reckless, (2) that the act was outrageous, and (3) that the act caused (4) extreme emotional distress to another.'" Enoka v. AIG Haw. Ins. Co., 128 P.3d 850, 872 (Haw. 2006) (quoting Hac v. Univ. of Haw., 73 P.3d 46, 60-61 (Haw. 2003)).

The Hawaii Supreme Court defines the term "outrageous" as conduct "without just cause or excuse and beyond all bounds of decency." Enoka, 128 P.3d at 872. An IIED claim cannot be sustained by "threats, annoyances, petty oppressions, or other trivialities." See Bragalone v. Kona Coast Resort Joint Venture, 866 F. Supp. 1285, 1294 (D. Haw. 1994). "[P]laintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." Restatement (Second) of Torts § 46 cmt. d.

Hawaii's definition of outrageous conduct creates a very high standard of conduct in the employment context. See Ross v. Stouffer Hotel Company, 879 P.2d 1037, 1048 (Haw. 1994) (granting summary judgment for employer on employee's IIED claim); Ingle v. Liberty House, Inc., Civil No. 94-0787(3), 1995 WL 757746, at *4 (Haw. Cir. Ct. Oct. 12, 1995) (noting, "In Ross, the Hawaii Supreme Court recently has set an extremely high, standard for such a claim in the

34

employment context[.]").  Under Hawai`i law, termination alone is not sufficient to support an IIED claim; rather, what is necessary is a showing of something outrageous about the manner or process by which the termination was accomplished.  As stated in Ingle, "[a]lthough intentional infliction claims frequently are asserted in connection with employee dismissals, recovery is rare.  Imposition of liability on this tort theory is likely only in the unusual case when an employer deliberately taunts an employee, or when an employer handles an employee with outrageous insensitivity." Ingle, 1995 WL 757746, at *4 (quotation omitted; emphasis added); see also Courtney v. Canyon Television & Appliance Rental, Inc., 899 F.2d 845, 852 (9th Cir. 1990) ("[d]ischarge, without evidence of more, does not create a case for emotional distress.").  This remains true even where an employee alleges that his termination was the result of unlawful discrimination or retaliation.  See Ross, 879 P.2d at 1048 (termination based on alleged marital status discrimination was insufficient to sustain IIED claim); Bragalone, 866 F. Supp. at 1294 ("firing an employee for what are seen as unfair reasons" was insufficient to sustain IIED claim) (citations omitted).

Severe emotional distress is defined as "mental suffering, mental anguish, mental or nervous shock and including all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger,

35

chagrin, disappointment, worry and nausea.  The intensity and the duration of the

distress are factors to considered in determining its severity." <u>Hac</u>, 73 P.3d at 60

(citations, internal quotation marks, brackets and ellipses omitted).

Here, Plaintiff's IIED claim is based on his termination for allegedly

making a false report of damage to his car, and the failure of Sirman to get back to

him regarding alleged statements made by Lauren when Plaintiff tried to present the

doctor's note regarding time off for back pain.  Plaintiff has not alleged that

anything was outrageous about the manner in which he was terminated, or any other

facts that could rise to the level of outrageousness.  In addition, soon after his

termination, Plaintiff was able to work full time in another position.  Therefore,

Plaintiff has not shown that he suffered extreme emotional distress.  Accordingly,

summary judgment is GRANTED on Plaintiff's IIED claim in favor of Defendant.

V.    <u>Hostile Work Environment</u>

Defendant argues that Plaintiff's hostile work environment claim must

be dismissed because Hawaii has not recognized such common law claim.  Plaintiff

states that the comments made about his age created a hostile work environment.

This Court agrees with Defendant.  The Hawaii Supreme Court has

clearly stated that where a statutory remedy exists, that remedy is exclusive.  <u>See</u>

Ross v. Stouffer Hotel Co. (Haw.) Ltd., Inc., 879 P.2d 1037, 1047 (Haw. 1994) ("it is both unnecessary and unwise to permit a judicially created cause of action, which is designed to promote a specific public policy in a narrow class of cases to be maintained where the policy sought to be vindicated is already embodied in a statute providing its own remedy for its violation") (citation and internal quotation marks omitted).  Plaintiff has a remedy through Hawaii Revised Statute section 378-2, and therefore, cannot maintain a separate common law cause of action for hostile work environment.  See Nelson v. Univ. of Haw., 38 P.3d 95, 106 (Haw. 2001) (noting that section 378-2 allowed for clams of hostile work environment based upon sex).

VI.    Punitive Damages

Defendant states that it is entitled to judgment on punitive damages because Plaintiff does not have clear and convincing evidence of willful misconduct upon which a punitive damages award could be based.  This Court agrees.

"Where clear and convincing evidence exists, one circumstance in Hawai'i that warrants an award of punitive damages is when there has been some wilful misconduct or that entire want of care which would raise presumption of a conscious indifference to consequences." Ditto v. McCurdy, 947 P.2d 952, 959 (Haw. 1997) (citation and internal quotation marks omitted).

As set forth above, this Court has dismissed Plaintiff's IIED claim because Plaintiff did not have evidence regarding outrageous conduct.  In his opposition, Plaintiff makes only conclusory statements that Defendant's acted recklessly and outrageously.  Plaintiff has not presented any facts to support such conclusion.  Accordingly, Plaintiff's request for punitive damages is dismissed as the evidence that has been presented cannot prove by clear and convincing evidence that Defendant engaged in willful misconduct or had an entire want of care.

VII.   After-Acquired Evidence

Defendant asserts that the after-acquired evidence doctrine prohibits Plaintiff from recovering any damages after October 10, 2008, because that is the date that he admitted he did not have a Bachelor's Degree from Orange Coast College.  In the motion, Defendant presented evidence that it believed Plaintiff had made a false statement on his resume that he had received a college degree when he stated "Bachelor of Physiology Studies" under the education section of his resume.  Defendant also presented evidence that had it known that he made a false statement, it would not have hired him.  Therefore, Defendant argues that if Plaintiff recovers damages, his damages should be cut off as of October 10, 2008, because even if he was still employed, he would have been terminated when it was discovered that he falsified his educational background.

38

The after-acquired evidence doctrine provides that

an employee's damages for backpay are limited if the employer learns of employee misconduct that would form an independent basis for termination, even if such information would not have been discovered absent the discrimination lawsuit. . . . backpay should be calculated from the date of unlawful discharge to the date the information was discovered.

EEOC v. NCL Am., 535 F. Supp. 2d 1149, 1172 (D. Haw. 2008) (citing McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352, 363 (1995)).  The after-acquired evidence doctrine can apply to limit backpay only if  the employer "'can prove by a preponderance of the evidence that it would have fired the employee for that misconduct.'" Id. (quoting O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756, 761 (9th Cir. 1996)).

Plaintiff states that Defendant is reading his application incorrectly and the words he used do not definitively state that he received a degree.  He claims that his use of the word "studies" indicate that he was not claiming he had a degree.  Instead, Plaintiff had taken studies for an Associates' degree.  In addition, on the second page of his employment application where it asks for degrees or licenses to be listed, Plaintiff listed only "Real Estate License Hawaii" and did not claim to

have Bachelor's degree from a college.  Also, under highest grade completed on the application, Plaintiff circled the number two out of four under years of college. Finally, Plaintiff states that he was asked to join Defendant's sales team after having performed well for another timeshare affiliate and that a college degree was not necessary.  According to Plaintiff, Defendant hired him because of his sales record, not because of his education.

Plaintiff has presented enough evidence to create a genuine issue of fact of whether it was reasonable for Defendant to believe that he made a false statement on his resume and whether it would not have hired him.  For these reasons, this Court will not apply the after-acquired evidence doctrine at this time.

CONCLUSION

For the reasons stated above, the Court GRANTS IN PART AND DENIES IN PART Defendant's Motion.  Defendant's motion is granted with respect to Plaintiff's negligent infliction of emotional distress claim, intentional infliction of emotional distress claim, hostile work environment claim, and Plaintiff's request for punitive damages.  Defendant's motion is denied with respect to Plaintiff's age discrimination claim, disability discrimination and retaliation

claims, and Defendant's request for application of the after-acquired evidence

doctrine.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 7, 2009.



_____
David Alan Ezra
United States District Judge

<u>Richard Pfeffer v. Hilton Grand Vacations Co., LLC, et al.,</u> CV No. 07-00492
DAE-BMK; ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT